IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:23-cr-00058-MR-WCM

| | |
|---|---|
| UNITED STATES, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JERMAINE DERRICK CARSON, JR., ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's "Motion to Dismiss pursuant to Bruen" [Doc. 27].

**I.     PROCEDURAL BACKGROUND**

On August 1, 2023, the Defendant was charged in a Bill of Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. The Defendant is currently scheduled for trial during the March 4, 2024, trial term. [Doc. 33].

On December 7, 2023, the Defendant filed the present Motion to Dismiss on the grounds that 18 U.S.C. § 922(g)(1)[1] is unconstitutional in light

---

[1] The statute provides in relevant part:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term

of the Supreme Court's recent decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). [Doc. 27]. The Government filed a Response to the Defendant's Motion to Dismiss on December 21, 2023. [Doc. 36].

## II. ANALYSIS

In D.C. v. Heller, the Supreme Court held that "[t]he Second Amendment protects an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home." 554 U.S. 570, 570 (2008). The Court further clarified that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." Id. at 626. In the years since Heller, the Courts of Appeals have developed a "two-step" framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. Bruen, 597 U.S. at 17.

---

exceeding one year; to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

The Fourth Circuit articulated such a framework in United States v. Chester:

> The first question is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. If it was not, then the challenged law is valid. If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny.

628 F.3d 673, 680 (4th Cir. 2010) (citations omitted). Accordingly, under Fourth Circuit law post-Heller, a defendant with a prior felony conviction "simply does not fall within the category of citizens to which the Heller court ascribed the Second Amendment protection of 'the right of law-abiding responsible citizens to use arms in defense of hearth and home.'" United States v. Moore, 666 F.3d 313, 319 (4th Cir. 2012) (quoting Heller, 554 U.S. at 635) (emphasis added). Therefore, firearm-related conduct by these defendants "lies outside the scope of the Second Amendment's protection," and thus § 922(g)(1) poses no constitutional issue. United States v. Pruess, 703 F.3d 242, 246 (4th Cir. 2012). "Moreover, the Supreme Court's declaration in Heller that felon in possession statutes are 'presumptively lawful regulatory measures' reinforces the fact that a litigant claiming an

otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." Moore, 666 F.3d at 319 (quoting Heller, 554 U.S. at 635 n.26).

In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, the Supreme Court articulated a new standard for challenges to state action under the Second Amendment, doing away with the previous "means-end" test that developed after Heller. Bruen, 597 U.S. at 19. Bruen involved a challenge to a New York state law that required an applicant for a concealed carry license to prove that "proper cause" exists in order for the licensing officer to issue it. Id. at 12. The Court struck down the law, holding that under their new standard, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 19. The Supreme Court explained that this new standard is consistent with their previous holding in Heller, as Heller "do[es] not support applying means-end scrutiny in the Second Amendment context." Id. Only the first step of the post-Heller two-step approach adopted by the federal appellate courts, the historical inquiry, is the proper test. Id. Bruen, however, only addressed challenges to prohibitions on law-abiding citizens possessing firearms. Id. at 12. Nowhere

in Bruen did the Court say that its holding applied to prohibitions on gun ownership by people deemed dangerous by way of a felony conviction.

Given that Bruen did not overrule Heller, courts have continued to uphold § 922(g)(1) in response to Second Amendment challenges. United States v. Jackson, 69 F.4th 495, 501 (8th Cir. 2023), reh'g en banc denied, 85 F.4th 468 (2023); Vincent v. Garland, 80 F.4th 1197, 1201-02 (10th Cir. 2023); Nicks v. United States, No. 5:20-CR-97-KDB-DCK-1, 2023 WL 4356065, at *10 (W.D.N.C. July 5, 2023) (Bell, J.) ("Bruen does not hold § 922(g)(1) to be unconstitutional, and Supreme Court dicta has repeatedly indicated that such restrictions on the possession of firearms by felons are valid."); United States v. Pendenque-Alcindor, No. 5:21-CR-215-FL-1, 2023 WL 7002059 (E.D.N.C. Oct. 24, 2023); United States v. Williams, No. 3:22-cr-158-HEH, 2023 WL 6368971 (E.D. Va. Sept. 28, 2023); United States v. Lane, No. 3:23-cr-62, 2023 WL 5663084 (E.D. Va. Aug. 31, 20230); United States v. Price, 635 F. Supp. 3d 455 (S.D.W. Va. 2022); United States v. Hughes, No. 2:22-CR-00640-DCN-1, 2023 WL 4205226 (D.S.C. June 27, 2023); see also United States v. Robinson-Davis, No. 7:22-CR-00045, 2023 WL 2495805, at *2 (W.D. Va. Mar. 14, 2023) ("[O]ver 100 district courts have held that the federal law prohibiting felons from possessing firearms remains valid even after Bruen.").

5
Case 1:23-cr-00058-MR-WCM   Document 41   Filed 02/08/24   Page 5 of 8

These post-Bruen holdings are consistent with the examination of the history and tradition of firearm regulations that Bruen mandates. The state of North Carolina, for example, has a history of dispossessing felons of firearms that dates back to the country's founding. As late as 1836, nearly thirty different crimes, including burglary and counterfeiting, could warrant the death penalty in North Carolina. N. C. Rev. Stat. (1836-37) c. 34. This held true until 1868, when the state's amended constitution limited the death penalty to only four crimes: murder, rape, arson, and burglary. N. C. Const. (1868) art. XI, § 2. Because a felon sentenced to death was obviously dispossessed of all his weapons, including firearms, it cannot be said, as the Defendant argues, that history and tradition does not support depriving felons of the right to own guns.

The history and tradition of excluding convicted felons from constitutional rights is likewise consistent with limits on felons' Second Amendment rights. While the Defendant argues in reliance on Heller as well as Range v. Attorney General that "'the people' as used throughout the Constitution 'unambiguously refers to all members of the political community, not an unspecified subset,'" and therefore "[u]nless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in Heller suggested it does not—to conclude that [the Defendant] is

not among 'the people' for Second Amendment purposes would exclude him from [other constitutional] rights as well." Range v. Att'y Gen. United States of Am., 69 F.4th 96, 101 (3d Cir. 2023) (quoting Heller, 554 U.S. at 580-81). But this argument ignores the longstanding reality that criminal defendants lose many of their constitutional rights upon conviction—the right to vote, the rights to assemble peaceably and to petition the government for redress, and the right to be protected against unreasonable searches and seizures, to name a few. Certainly the Defendant cannot argue that he was entitled to possession of a firearm while he was imprisoned on his underlying felony charge.

The Defendant here, a previously convicted felon, squarely falls outside the category of law-abiding citizens that, as the Supreme Court has repeatedly emphasized, the Second Amendment is intended to protect. See Bruen, 597 U.S. at 2 (holding that the challenged law "violates the Fourteenth Amendment by preventing *law-abiding citizens* with ordinary self-defense needs from exercising their Second Amendment right to keep and bear arms in public for self-defense" (emphasis added)). Therefore, the Defendant's constitutional challenge fails at the first, and now only, step of the Heller and Bruen inquiry. The Defendant has also not put forward any argument that

7

Case 1:23-cr-00058-MR-WCM   Document 41   Filed 02/08/24   Page 7 of 8

the factual circumstances of his case are unique or a marked departure from the realm of ordinary challenges to § 922(g)(1).

Accordingly, this Court rejects the Defendant's argument and finds that 18 U.S.C. § 922(g)(1) survives constitutional scrutiny under the Bruen standard. The Defendant's Motion will therefore be denied.

## ORDER

**IT IS THEREFORE ORDERED** that the Defendant's "Motion to Dismiss pursuant to Bruen" [Doc. 27] is **DENIED.**

Signed: February 7, 2024

Martin Reidinger
Chief United States District Judge